Good morning. The court is now going to move to its third case of the morning. This is United States v. Lance Wehrle. This is appeal number 19-2853, and we're going to begin with argument from the appellant, Mr. Youngle. Thank you, Your Honors. May it please the court. The district court has a gatekeeper obligation imposed by federal rule of evidence 702 to ensure that any and all scientific testimony or evidence admitted in a trial is not only relevant but reliable. The district judge in this case failed to perform that gatekeeper function, and this was an abuse of discretion. The judge allowed expert testimony to be presented over objection when the expert was clearly not qualified. We know it was expert testimony because the officer was repeatedly asked about the forensic analysis of the computers and devices. In addition, the officer provided testimony concerning the lengthy process of analyzing computer devices and forensic exams, right-blocking, preparing mirror images, explaining metadata, geolocating addresses, the significance of multiple IP addresses and identification numbers from Freenet, multiple legal conclusions that the images found were child pornography, multiple answers that the images depicted lewd exhibition of the geolocation. The testimony was not lay witness testimony under federal rule of evidence 701, as asserted in the government's brief. And further, this testimony is inadmissible under federal rule of evidence 701. The words that were repeated over and over during the trial, forensic analysis, are red flags and signposts for the court that this is expert testimony. Counsel, how did Officer Wimmersberg's testimony here differ from the testimony of an evidence technician who's collecting evidence from a scene, using her skills and qualifications from her work, and explaining what she did in terms of evidence collection? That seems to be what the officer was doing here. Your Honor, I would respectfully disagree, and I think that's a very good question, but that's those factors that we talked about, the forensic analysis and the complications with respect to these computer cases. I've defended a number of child pornography cases, done evidentiary hearings with respect to these cases, and the government traditionally will pull in experts from across the country and have them testify and lay the proper foundation. And what we have here is these issues of right blocking, these issues of geolocation, all of those issues that she interpreted for the court and that she explained are issues that are beyond the scope clearly of a jury, but also, I would argue, for a judge. And our position, Your Honor, is that the rules of evidence should apply the same way for a bench trial and a jury trial. There weren't any allegations here of deletion or manipulation of images, were there? There wasn't any, there wasn't an offense that they argued that with respect to the morphing of images or those types of things, but the basis of the investigation, this Freenet investigation, which is an online peer-to-peer investigation, those are complicated issues. And I think if you look at the case law, some of the case law that we cited, that United States versus you, there's another case, United States versus Garnier, those cases talk about the complexity of this issue in computer forensics. And in that you case, the witness and the evidence was excluded. The government took the same position that I'm taking in our case, and we cited that in our reply brief. So, Your Honor, I don't think this is just a technician that's saying, this is what I found at the scene, or this is an analytical process that takes hours and hours, and that's what the witness testified about in the trial court. But was it really the thrust of the officer's testimony, not about the complicated computer usage, but she testified she plugged in a computer, put the images in there, and produced them, something that most teenagers could do today. What makes this scientific or cross over to the 702 land? I totally disagree with that, Your Honor, and I think those two cases that we cited directly address that issue. This is not, and they were actually in the case that the government cited, they were cited for what the defense was relying on in that particular case. But this isn't just a plug-in scenario. This is, if you're going to make a mirror image of a computer, you have to right block it, you have to do all of these different techniques. The other thing that happens in these cases is it pulls out the images, but the analysis that the prosecutor asks about is when the officer goes back in and looks at all of those images, determine whether images would meet the definitions of child pornography, would be child erotica. So, this is not just a plug it in and pop out cell phone data, which is what they relied on. And I would submit to the court, there are no cases that are out there that the government cited that say a forensic examination like this is, they didn't have a case that they cited with similar facts. It's a totally different scenario. And in that case, it also talked about the fact that that particular individual just plugged it in and pulled it out. He didn't do any interpretation, he didn't do any testimony. This particular officer did do interpretation because she testified in the trial court that it was child pornography, that these things did meet the definition, that it was lewd and exhibition. If this were a jury, maybe that argument would be different. But this was a bench trial. So, judges certainly know how to distinguish between expert testimony and lay testimony. And what's the harm or what's the prejudice given on that aspect, on that argument that she testified that the images were child pornography? That's something that would be obvious to a judge one way or the other. What's the harm given that it was a bench trial and not a jury trial? On that point, Your Honor, I just think it goes back to our other analysis with respect to the testimony. I think it is... But that's a separate question. Whether or not she's qualified or testifying to scientific matters that are outside of the province of a lay person is a separate question than her giving an expert opinion about the images being child pornography. So, I'm focusing on the second aspect, her giving what you have argued as an expert opinion that the images at issue were child pornography. My question is, while that might have weight in front of a jury, you're in front of a judge here. It's a bench trial. Judges certainly know the difference between accepting expert testimony and lay person testimony. And the judge here looked at these images herself and said that they were so obviously child pornography. What's the prejudice given that of Officer Williamsburg's testimony that the images were child pornography? I think, Your Honor, it just is that the rules of evidence should apply across the board. I understand the judge is in a different position than a jury is. But what we have is we have a judge that ignored this issue of the Rule 702 issue. And so, I don't know how many cases that this judge has tried with respect to child pornography, that sort of thing. But it's a tougher situation, obviously, for the defendants. I would concede that point. On your first point about needing expert qualification and having to be disclosed as an expert under 702 to give the forensic testimony, what's the prejudice here given the cross-examination of the officer? The trial court even noted that you made a valiant effort to disqualify her and you extensively cross-examined her. Given, again, that it's a bench trial, why wouldn't any potential prejudice have been cured by that in your opportunity to raise the Dauber challenge, which is essentially what you were doing through cross-examination during the course of the bench trial? Well, Your Honor, I think it's an abuse of the court's discretion there. I think that's a different standard. And the court has an obligation to follow the rules. Why would it be an abuse of discretion if, in a bench trial, the court addressed a Dauber challenge through the course of the trial? It would be different if it were a jury. I understand your argument there because you don't want to do something like that in the presence of the jury. But it's a bench trial. Why couldn't—and the judge, again, specifically noted the extensive cross-examination in an attempt to disqualify her and rejected that. So why isn't that perfectly appropriate for a bench trial? Well, basically, Your Honor, what the rules of evidence say is that evidence shouldn't come in if they didn't meet the standards of expert, if they didn't qualify the witness as an expert. And since the expert was not qualified as a witness, then that testimony doesn't come in. All of the evidence that was admitted shouldn't have come in, and that's severe prejudice. The defendant wouldn't have been convicted because this was the key witness in the case. Couldn't the judge have implicitly qualified her as an expert by accepting her testimony after you extensively cross-examined her and tried to disqualify her? She didn't do that, though. And the case law that we've cited basically says if the witness was not offered as an expert and was not qualified as an expert, then expert opinion and expert evidence and testimony is not admissible. So that's our position. Our position is it's not admissible straightaway. In the U case, they excluded the defense expert and they excluded all of the defense evidence. Unfortunately, I wasn't the trial counsel in the case and didn't cross-examine the witness, but, Your Honor, I think this evidence shouldn't come in, and that's the issue. And the rules are black and white. The rule basically says if this is expert testimony, they don't lay the proper foundation, they don't qualify, there isn't a rule. That's why I noted the court's obligation as the gatekeeper to protect the rules of evidence. And what we're doing here is we're saying in a bench trial, oh, the rules of evidence don't apply. The cases that we cited show that evidence is excluded, cases are reversed based on expert testimony coming in without proper qualifications. Mr. Yangle, you're into your rebuttal time. Would you like to reserve the remainder? Yes, Your Honor, I will, and just come back. Thank you very much for pointing that out. Thank you. Ms. Rappert, we'll turn to you. Thank you, judges. May it please the court and counsel. Judge Seneb, I think that you kind of hit the nail on the head here, that Officer Wimmersberg was primarily testifying to digital images and videos that she located on appellant's digital devices. She was testifying as a fact witness and not as an expert witness. Of course, witnesses can testify to facts within their personal knowledge. And Officer Wimmersberg was testifying to her searches of various digital devices that were located in appellant's residence and the images and videos that she located during those searches. What about counsel's objection that she did that but she went way beyond that by testifying about geolocation and other technicalities involved in the forensic examination? Well, I think the testimony regarding the geolocation judge had to do with the initial Freenet investigation, which is what led us to the appellant and which led us to executing a search warrant on the appellant's residence. So Amanda, Officer Wimmersberg's testimony, she did kind of give a beginning to end kind of storytelling function. And how this case initially started was an investigation on a peer-to-peer network called Freenet. She did talk about geolocating IP addresses in the Jerseyville, Illinois area. She indicated that through her investigation, she was able to determine that a specific IP address was requesting images of child pornography. Why wouldn't that be expert testimony? Because, Judge, that testimony was merely offered to show how she obtained a search warrant in this case for the appellant's residence. So that testimony regarding the initial Freenet investigation really was detached from her later searching the various digital devices that were located in the appellant's residence. So the geolocating, the IP testimony was just more to provide the court context in the course of the bench trial of how it was that agents were able to receive a search warrant for the appellant's residence. And so we submit that that was not expert testimony and wasn't offered as expert testimony. It was merely to provide context to the court and provide a full and complete picture of how it was that agents were able to specify that the appellant was engaging in potential activities. They received a search warrant from state court to search his residence. And it was during the search of his residence that they located in excess of 13 digital devices, which were then searched one by one by Officer Wimmersberg. So we submit that that's kind of in a separate compartment, that the geolocating testimony, the IP address testimony, that all had to do with the initial investigation leading up to obtaining a search warrant. What appellant also argues with respect to the term, the use of the term child pornography. I would just note for the court, admittedly, she was responding to questions posed by myself by candidly that she was asked a number of times. When you were searching this particular device, did you find items of child pornography? And she responded in the affirmative. She said yes. However, she also then gave detailed verbal descriptions of each individual video and file that she located. She described that, you know, certain photos depicted, you know, a minor child engaged in an act of sexually explicit conduct and again gave detailed descriptions. So the concerns that the appellant raises under United States v. Knoll are really not at issue here because, again, the officer did testify to what the images contained. And additionally, it was a bench trial and the court from the outset, prior to even starting the bench trial, reviewed with counsel the elements that she would have to find to find the appellant guilty beyond a reasonable doubt of all the offenses. And so where she clearly knew from the outset what the elements were that she had to find, that the use of the term child pornography in the context of the trial, that there's no abuse of discretion. And also, there was not an objection lodged to that phraseology at trial. And so, again, with respect to that singular point of the use of the term child pornography, that would be reviewed for a plain error as opposed to abuse of discretion. Ms. Robert, my concern is less with the use of that phrase and more with some of the more technical aspects that Officer Wimmersberg was speaking to that Mr. Youngall referred to earlier. When we read Federal Rule of Civil Procedure 52, we don't see different rules of evidence for bench trials than we do jury trials. And that's part of Mr. Youngall's point. My question for you goes to this concept of when we're going to drill down into the testimony that is being offered by this particular witness, if it's going to have a certain technical nature, and it's going to be a bench trial, and the judge is going to allow some cross-examination perhaps to balance that out, is there a limiting point at which that district judge should have dual-qualified that witness? We certainly have a lot of case law that talks about one individual speaking both to the factual circumstances of a case as well as offering opinion testimony. Wouldn't it have been safer here to dual-qualify Officer Wimmersberg? We wouldn't be in this debate then? Judge, I mean, I suppose that perhaps it could have been safer, but of course, Article III judges are presumed to know the law. That's a case site from the Kersley case. And so in this case, I don't know that it would be necessary to have to do kind of that distinguishing that is asked during jury trials of having an officer testify to what are factual points, and then having a clear kind of turn, and then having that same officer then kind of specifically talk about that which falls under Rule 702. And again, Judge, I would submit that the testimony here, again, the bulk of it was Officer Wimmersberg identifying images and photos that were recovered from various digital devices. Of course, she did testify to using two computer programs to conduct those searches, but the fact that she used two computer programs to conduct those searches does not then convert what would otherwise be lay testimony or otherwise be fact-based testimony into expert testimony. And so, and again, Judge St. Eve kind of hit upon a really good analogy that I had thought about, that it's similar to a crime scene investigator going to quote-unquote process a scene. Oftentimes, when a crime scene investigator testifies at trial, a prosecutor will ask, what does it mean to process a scene? How do you go about collecting evidence, putting on latex gloves to recover evidence so as to preserve the integrity of the evidence? I think that is akin to what Officer Wimmersberg did here. And Rule 701, the advisory notes, contemplates kind of making this distinction between expert-based testimony and opinion-based testimony that the distinction is lay testimony results from a process of reasoning familiar in everyday life, and expert testimony results from a process of reasoning which can be mastered only by specialists in the field. And so here, where Officer Wimmersberg was testifying to duplicating the data on a device and then searching that duplicate for photos and videos, that falls more under the auspices of Rule 701 because it results from a process that, in this technological age, is familiar in everyday life. So I appreciate, Judge Brendan, the question, but I do think that that would have been unnecessary here because this testimony did not qualify as expert testimony under Rule 702. And even following, if there were for some reason to be some error with Officer Wimmersberg offering this testimony, there was certainly ample evidence, notwithstanding her testimony, of the appellant's guilt. There was other testimony from a lieutenant from the Edwardsville Police Department, Lieutenant Liebarger. He conducted forensic previews of three different hard disk drives. And when he reviewed government's exhibits 54, 55, and 56, he testified at trial that he observed, and the phrase he used was low-hanging fruit, but he observed various photos and videos, specifically a photo of the defendant engaged in oral sex with the minor boy that was later identified. Other photographs depicting the minor boy engaged in sexually explicit conduct, specifically lascivious display of his genitals. So he personally observed those images. That testimony was not objected to at trial. And those exhibits, government's 54, 55, and 56, were properly admitted at trial. So you have Lieutenant Liebarger's testimony standing on its own where he observed a number of photos and videos on three of those devices. There, of course, was the defendant's statement. He provided a video-reported statement where he acknowledged sexually abusing this boy for approximately six months up to a year. He acknowledged committing sexual acts on the boy. He acknowledged taking photographs of that sexually explicit conduct. He acknowledged during the interview that he used the quote-unquote little orange camera to take some of the photos. And that little orange camera was a Fujifilm camera recovered from his residence. And then, of course, even aside from Lieutenant Liebarger's testimony, the defendant's own admissions, when all of the agents searched Appellant's residence, they, of course, also located a brown photo album in the master bedroom of Appellant's residence. Within that brown photo album, which was Government's Exhibit 57, there was a multitude of photographs depicting sexually explicit conduct. And the final photograph that was in that photo album was a printed photograph of the minor, identified as A.E., engaged in sexually explicit conduct, specifically the lascivious display of his genitals. So certainly that printed photograph was completely divorced and completely separate from Officer Winn-Ruthberg's testimony. So while we submit that her testimony was factually based or potentially under the auspices of Federal Evidence 701, even taking her testimony aside, there was ample evidence of the Appellant's guilt, notwithstanding that testimony. With respect to the other issues that were raised in Appellant's brief, with respect to the constitutionality of the statute, the trade inscriptions, and the substantive reasonableness of the sentence, the United States would respectfully stand on its brief unless there are questions from the court. And if there are no additional questions from the court, we would defer on the balance of our time. Thank you, Ms. Ruppert. Mr. Youngle, let's go back to you for rebuttal, please. Thank you, Your Honor. Your Honor, the rules of evidence should apply to cases equally. The government shouldn't be given a break because the defendant is a bad guy or charged with despicable offenses. A criminal defendant has a constitutional right to a trial and a right to rely on the rules of evidence, the right to make the government prove the case and prove it properly. In this case, the government broke those rules and introduced key evidence and expert opinion testimony through a witness that was never qualified as an expert. Our position is that the government knew this witness was not qualified. That's why they never offered the witness as an expert witness. There was evidence from a grand jury transcript that was used in cross-examination that there was a question about this witness's qualifications. There was also evidence dealing with no CV or resume, and all of that was in advance. And so our position would be is that the government didn't provide proper Rule 16 notice, and based on that, this evidence should have been excluded. The prejudice, Your Honor, is that this witness introduced all of the child pornography. All of this evidence the government talked about, Ms. Ruppert talked about, was introduced through this particular witness. So our position is if the court, if the judge is going to sentence the defendant to 40 years and condemn him for basically the rest of his life, that we need to do it right. We need to make sure that the rules are followed, and I think the case law that we cited submits that the rules were not followed. Mr. Schenkel, was there ever a motion to suppress Fylde? There wasn't, Your Honor, and I think that'll probably be something that will be addressed in future legal proceedings, but I wasn't the attorney that was involved. I believe there were some issues with respect to the Freenet investigation in this particular case, but that was never addressed by his trial counsel. Thank you. We are asking, you know, what we're asking the court to do is decide on the integrity of the rules of evidence, and the mandate set out by the Supreme Court in my opening line. The government wants the court to find the error is harmless, there is overwhelming evidence. Well, if the evidence was excluded like it should have been, there's not overwhelming evidence. A defendant has the right to go to trial and play for the fumble. If the facts are bad, argue the law. If the rules of evidence give you a defense, assert that. What the government wants this court to do is rubber stamp this case and give them a slap on the wrist. A little chiding in the opinion, you shouldn't have done that. Well, on behalf of my client, I challenge the court to not give them even more precedent that allows them to disregard the rules. Tell them you can't take shortcuts and do whatever you want. You can't take inconsistent positions on the issue to save your case, which is what they've done in this case compared to the U case that we cited in our reply brief. Hold them to the standards set out in the rules of evidence. If we're going to resurrect the criminal trial, the defendant and the lawyers must have confidence that the rules of the game are going to be followed. And your honors, I would just ask in my last statement that you look at the reply brief. That addresses my issues on why I believe this was expert testimony. Thank you very much for the time. Thank you, Ms. Ruppert. Thank you, Mr. Youngall. Mr. Youngall, I understand you're appointed by the court and you go with the great thanks of the court. Thank you very much, your honors. Thank you to both counsel. The case will be taken into revision.